UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 3:24-cv-1024-TJC-SJH

NESTOR ROJAS
_____/

### UNITED STATES' MEMORANDUM OPPOSING NESTOR ROJAS' MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

The United States, via the undersigned, responds to and opposes Nestor

Rojas' Section 2255 Motion (Doc. 3, 3-1). Shortly before trial number one, Rojas

pled guilty to Count One of the Indictment with a cooperation Plea Agreement (Doc.

575). Rojas pled guilty on his own free will, without duress or coercion from anyone,

including his lawyer Phillip A. Horowitz. The Court found a factual basis for the

plea. The Court also denied multiple motions for Judgment of Acquittal by all

defendants, and sentenced Jorge Perez and Ricardo Perez to multi-year terms of

imprisonment for their convictions on Count One (and others) after trial number

one. This is a simple case of buyer's remorse. Rojas testified in two trials that he

knew that he and business partner (Aaron Alonzo) were committing fraud when the

urine samples they obtained from outside labs never went to Campbellton-Graceville

Hospital for testing, and at best were "accessioned" there, meaning patient data was

1

input into the CGH database but no testing of urine samples occurred at CGH. In many respects, Rojas participated in the most egregious form of the fraud. Rojas second guesses his conviction simply because his business partner Aaron Alonzo was acquitted at the conclusion of trial number two. If the outcome of trial number two was different as to Alonzo, Rojas likely never files this motion. Rojas' motion has no merit and should be denied.

## I.     Factual Background as to Nestor Rojas

On April 21, 2022, Nestor Rojas appeared before United States Magistrate Judge Joel B. Toomey and pled guilty to Count One of the Indictment with a Plea Agreement (Docs. 572 & 575). On April 26, 2022, Chief Judge Corrigan accepted his plea and adjudicated him guilty (Doc. 618). On December 15, 2023, the Court sentenced Rojas to three years of Probation (Doc. 1103).

The Court ultimately heard Rojas testify twice in the Government's case in chief in trial number one and trial number two. Rojas testified that he and Alonzo met with Jorge Perez at CGH and discussed a "business opportunity" in which Rojas and Alonzo would recruit labs, connect them with the hospital, and billing would be done through CGH to obtain the higher in-network reimbursement rate. (Tr. Vol. VII, p. 91-92.)[1] Alonzo, through their company CGH Holdings ("Holdings"), signed

---

[1] These trial testimony citations are from trial number one, unless indicated otherwise.

a contract with CGH under which Holdings would "negotiat[e] and execut[e]" contracts with outside labs to perform testing services. CGH would pay Holdings 70 or 80% of the "net monthly collections" from the contracts Holdings had negotiated on CGH's behalf. (GX 26E, at 7.) Both Alonzo and Rojas knew (1) the testing services would be provided by labs other than CGH, and (2) CGH would bill for those tests and remit a sizeable percentage to Holdings. As Rojas described it, the agreement was for Holdings to recruit labs that already had samples, connect them with CGH on paper, and then have CGH bill insurers, after which Holdings would get paid. (Tr. Vol. VII, p. 99-100.). Holdings was also paid directly by laboratories that Alonzo and Rojas entered into agreements with. (Rojas PSR, Doc. 1084, ¶ 57.)

Alonzo and Rojas initially connected CGH with Companion DX, a Houston-based lab they had worked with since 2013 that had the capacity to perform both screening and confirmatory urine drug tests. Rojas testified that he, Alonzo, Jorge Perez, and others participated in a phone call in which Jorge Perez said he wanted Companion DX to split the samples it had received and send one portion to CGH for the screening test, with the confirmatory test performed by Companion DX — even though Companion DX could do both. (Tr. Vol. VII, p. 103-106.) As Rojas testified, the purpose of having the sample even "touch" the hospital was for the higher reimbursement. (*Id.*, p.105.)

The contract between Companion DX and CGH, which Alonzo forwarded to

3

Jorge Perez (GX 30D), was for "reference laboratory services . . . to be provided by CDX to [CGH]" pursuant to test orders "placed by [CGH]" — the exact opposite of what Jorge Perez described in the phone call. It also provided that CGH was solely responsible for billing and remitting fees to Companion DX. And it stated that the purpose of the agreement was for CGH to obtain reference laboratory services "for the benefit of its patients." There was sufficient evidence that the contract was a sham designed to make it appear as if CGH was legitimately billing for lab tests it had to reference out because it could not otherwise serve its own patients, when in fact, as Alonzo and Rojas knew, the patients were individuals whose samples were referred to Companion DX in the first instance and CGH served only to "accession" samples and bill tests to obtain a higher reimbursement.

Companion DX was only one of many labs and other sources of urine that Alonzo and Rojas recruited for the scheme. *See* GX 52A. The exhibit contains Brenda Rhodes' handwritten words "Aaron + Nestor" next to a group of labs and other medical providers. (Rhodes, Vol. IV, p. 229, 232-33.) Rojas testified that he and Alonzo were responsible for labs, such as B3, ON3, and Central Labs. (Rojas, Vol. VII, p. 106-108.) There was evidence, through GX 30A and 30B, that Alonzo would receive and forward spreadsheets prepared by the Empower (Jorge and Ricardo's billing company) billing team showing (1) the insurance payment to CGH for samples tested by these labs, (2) the amount owed to the lab for performing the

4

tests, and the split of the balance between CGH and Holdings. These documents were further evidence that CGH was billing for work it did not perform. Thus, Rojas knowingly joined and participated in the scheme. From in or about March 2016 through August 2016 (which is when Jorge Perez stopped communicating with Alonzo and Rojas), the total payments to Holdings exceeded $9.5 million. (Rojas PSR, Doc. 1084, ¶ 60). Rojas' testimony in trial number two was essentially the same.

## II.    Legal Standard for Ineffective Assistance of Counsel

### A. Burden of Proof

In general, on collateral review the petitioner bears the burden of proof and persuasion on each and every aspect of his claim, *Beeman v. United States*, 871 F.3d 1215, 1221–25 (11th Cir. 2017) (collecting cases), which is "a significantly higher hurdle than would exist on direct appeal" under plain error review, *see United States v. Frady*, 456 U.S. 152, 164–66 (1982). Accordingly, if this Court "cannot tell one way or the other" whether the claim is valid, then the petitioner has failed to carry his burden. *In re Moore*, 830 F.3d 1268, 1273 (11th Cir. 2016); *see also Williams v. United States*, 985 F.3d 813, 821 (11th Cir. 2021) ("When a case turns on an issue of historical fact, the available evidence, whether traffic footage or the legal landscape of yesteryear, must satisfy the burden of proof on the disputed issue. If the evidence is silent or in equipoise, then the party with the burden fails."). Rojas cannot meet

5

this burden.

### B. Timeliness

Rojas's judgment of conviction became final on January 16, 2024, when the time for filing a direct appeal passed. *See Akins v. United States*, 204 F.3d. 1086, 1089 n.1 (11th Cir. 2000) (if defendant does not pursue direct appeal, conviction becomes final when time for filing direct appeal expires). Rojas timely filed his section 2255 motion on November 4, 2024.

### C. Cognizability and Procedural Bars

Rojas's claims that counsel was ineffective are grounded in the Sixth Amendment and are cognizable under section 2255. *See, e.g., Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings). Rojas's ineffective assistance of counsel claims are not procedurally barred. *Id.*

### D. Cause of Rojas's Claimed Ineffective Assistance

Rojas argues that his counsel Phillip Horowitz rendered ineffective assistance by coercing him into a plea. Rojas asserts this for the first time more than two and a half years after pleading guilty and testifying about his illegal conduct during two jury trials. On their face, Rojas's claims are meritless.

In order to successfully assert ineffective assistance claims, Rojas's claims "must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Rojas has not satisfied that standard. To show that he suffered constitutionally ineffective assistance of counsel, Rojas must allege and prove that his counsel's deficient performance worked to his actual and substantial disadvantage. *Reece v. United States*, 119 F.3d 1462, 1465–68 (11th Cir. 1997). Rojas must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To succeed on an ineffective assistance of counsel claim, a petitioner must meet a stringent, two-prong test. First, the petitioner must show that counsel committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed … by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, the petitioner must prove resulting prejudice. *Id.* If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005). *Strickland* sets a "high bar" for ineffective assistance claims, and surmounting it "is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted).

When evaluating performance, this Court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To establish deficient performance, a petitioner must show that "no competent counsel

would have taken the action that his counsel did take." *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). The standard that the petitioner must meet is both "rigorous" and "highly demanding," and requires a showing of "gross incompetence" on counsel's part. *Kimmelman v. Morrison,* 477 U.S. 365, 381–82 (1986).

A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Rojas contends that his counsel rendered ineffective assistance because he (along with Government counsel) coerced Rojas into pleading guilty to Count One of the Indictment. Rojas (undoubtedly borrowing from or having his motion ghost written by others) highlights the testimony of Kelly Tobin (United Healthcare), Teresa Jackson (Aetna), and Garrett Shohan (Aetna). As ser forth in multiple other Government responses to these arguments, Rojas is incorrect.

However, before getting to the substance of those arguments, Rojas fails to articulate that his counsel's advice falls anywhere near the *Strickland* standard. In fact, based on the trial convictions of Jorge and Ricardo Perez and the guilty pleas of other co-conspirators, and the basic facts set forth as to Alonzo and Rojas, Mr. Horowitz's advice was not only not constitutionally deficient, it was prudent. Rojas

participated in obtaining urine samples from labs that could already perform the qualitative and quantitative urine drug tests, sent them to CGH so that they "touched" the hospital and could be "accessioned" there (essentially for no reason), then Holdings received $9.5 million over approximately five months until Jorge Perez decided he did not need Alonzo and Rojas any longer.

To advise a client to plead guilty, assist in prepping him twice to testify in substantial jury trials, and advocate for and obtain a probationary sentence in a $9.5 million loss case should be lauded by Rojas, not criticized as constitutionally deficient. Further, Rojas (who bears the burden) cannot and does not point to any portion of the change of plea hearing with Magistrate Judge Toomey on April 21, 2022, or any writing or assertion thereafter, that anyone coerced him to do anything. Simply put, Rojas does not like that Alonzo was acquitted. Such does not make a section 2255 claim. Nothing in the law guarantees that when a co-conspirator pleads guilty, another is automatically convicted at trial.

Pivoting to Rojas's baseless claims about insurance company witnesses, his mischaracterizations about their testimony do nothing to support his motion. The claims regarding insurance company witness testimony mirror those in Jorge and Ricardo Perez's Motion for New Trial Based on Newly Discovered Evidence (Doc. 1149), which the Court denied in a one-page Order (Doc. 1163). As set forth in the Government's response to that motion (Doc. 1151), insurance company witnesses

9

for UHC (Kelly Tobin) and Aetna (Teresa Jackson) did not change their testimony or recant any testimony from trial number 1 to trial number 2. On cross examination, counsel for Aaron Durall repeatedly pointed to the word "screen" in a claims data field, but neither witness ever testified that the presence of that word changed their view that the CPT codes referenced a billing for a definitive test. This line of questioning from Durall's counsel did nothing to detract from admissible evidence in both trials that the essence of the fraud was billing for testing that the rural hospitals could not and did not perform, and in Alonzo and Rojas's case that CGH never performed.

Because Rojas cannot make any showing regarding cause of ineffective assistance, there is no need to address prejudice. Rojas's ineffective assistance claims are entirely without merit.

### III.    Conclusion

This case was complex. The acquittals in trial number two do not render the guilty verdicts and guilty pleas (or the advice regarding those pleas) suspect in any way. Rojas cannot and does not point to any actual evidence whatsoever of coercive action by his lawyer Phillip Horowitz or the Government. The essence of Rojas's claim is that he is upset that he pled guilty and that Alonzo was acquitted in trial number two, a result that easily (based on the evidence) could have been different. Rojas's counsel obtaining a probationary sentence, based on a guilty plea in a case

that easily could have involved multi-year incarceration, was excellent legal work,

not constitutionally ineffective. Rojas's motion should be denied without a hearing.

                                                  Respectfully submitted

                                                  ROGER B. HANDBERG
                                                  United States Attorney

                                                  */s/ A. Tysen Duva*
                                                  A. Tysen Duva
                                                  Assistant United States Attorney
                                                  Florida Bar No. 0603511
                                                  300 N. Hogan Street, Suite 700
                                                  Jacksonville, Florida 32202
                                                  Telephone: (904) 301-6300
                                                  Facsimile:    (904) 301-6310
                                                  E-mail: Tysen.Duva@usdoj.gov

                                                  GLENN S. LEON
                                                  CHIEF
                                                  U.S. DEPARTMENT OF JUSTICE
                                                  CRIMINAL DIVISION, FRAUD SECTION

By:        */s/ Gary A. Winters*
                  Gary A. Winters (Bar # A5501852)
                 Trial Attorney
                 United States Department of Justice
                 Criminal Division, Fraud Section
                 1400 New York Avenue, NW
                 Washington, DC 20005
                 Tel: (202) 598-2382
                 Email: Gary.Winters@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Nestor Rojas

<u>*s/ Tysen Duva*</u>
Tysen Duva
Assistant United States Attorney

12